UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA MORSE,

       Plaintiff,                                Hon. Gordon J. Quist

v.                                                    Case No. 1:12-CV-1045

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 60 years of age on her alleged disability onset date. (Tr. 134). She successfully completed high school and worked previously as a records clerk and assistant retail manager. (Tr. 26, 43, 171).

Plaintiff applied for benefits on August 19, 2008, alleging that she had been disabled since July 30, 2008, due to heart bypass surgery, diabetes, sleep apnea, hypertension, acid reflux, osteoarthritis, and high cholesterol. (Tr. 134-40, 164). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 76-133). On December 21, 2010, Plaintiff appeared before ALJ John Belcher, with testimony being offered by Plaintiff, Plaintiff's daughter, and a vocational expert. (Tr. 34-75). In a written decision dated March 18, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 19-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL EVIDENCE

On July 30, 2008, Plaintiff reported to the emergency room complaining of "band-like pressure with burning and radiating up to her esophagus into her back." (Tr. 230). Following a chest

3

x-ray and an EKG examination, Plaintiff was "admitted for further treatment and evaluation." (Tr. 230). A subsequent heart catheterization procedure revealed that Plaintiff was suffering "triple vessel disease." (Tr. 230). On August 7, 2008, Plaintiff underwent coronary artery bypass surgery. (Tr. 239-41). Plaintiff was discharged from the hospital on August 16, 2008. (Tr. 230).

On August 28, 2008, Plaintiff participated in a sleep study the results of which revealed that she was experiencing "severe" central sleep apnea syndrome and "severe" obstructive sleep apnea syndrome. (Tr. 356-58).

Treatment notes dated September 3, 2008, indicate that Plaintiff "is doing very well" and that her heart exhibited "regular rhythm without murmur, rub or gallop." (Tr. 296-97). Treatment notes dated September 23, 2008, indicate that Plaintiff "has been doing well since her bypass surgery" and is "currently doing fine and doing well." (Tr. 298-301).

On February 4, 2009, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 315-17). Plaintiff reported that she suffered "a stroke in 2005 that gave her vertigo, left facial weakness and dysphasia."[1] (Tr. 315). Plaintiff also reported that since her heart bypass surgery she experiences "twinges of chest pain." (Tr. 315). Plaintiff reported, however, "that her biggest problem working is dealing with her short term memory problems." (Tr. 315). Specifically, Plaintiff reported that "she transposes number and has to use crib notes to remind herself of appointments and tasks." (Tr. 315). Plaintiff reported that her memory problems "occurred after her bypass surgery." (Tr. 315). Plaintiff exhibited limited range of motion in her left shoulder, but otherwise the results of a physical

---

[1] Dysphasia refers to "a partial or complete impairment of the ability to communicate resulting from brain injury." *See* Dysphasia, available at http://medical-dictionary.thefreedictionary.com/dysphasia (last visited on February 6, 2014).

examination were unremarkable. (Tr. 316-17). With respect to Plaintiff's memory impairments, the doctor concluded as follows:

> The memory problems the client complains about are consistent post bypass surgery when the cardiac pump is needed. Microemboli are showered at the time the client is on the bypass pump and it is felt that this accounts for the post operative problems with memory. She is able to accommodate this problem with crib notes.

(Tr. 317).

On May 14, 2010, Plaintiff participated in a CT examination of her brain the results of which revealed "no acute intracranial abnormality." (Tr. 341).

Treatment notes dated December 27, 2010, indicate that Plaintiff was experiencing "increased ashen color according to her daughter as well as difficulty with walking and shortness of breath." (Tr. 376). Plaintiff reported that she was "feeling very tired and weak and just cannot really walk and do much." (Tr. 376). On January 6, 2011, Plaintiff participated in a cardiovascular stress test the results of which were characterized as "a negative exercise electrocardiogram to 5 METS with no significant changes from baseline abnormalities in an individual who has a below average level of exercise tolerance for age." (Tr. 372).

At the administrative hearing, Plaintiff testified that in approximately January 2010 she worked for Health Port "transferring medical records." (Tr. 42). Plaintiff testified that she was terminated from that position after she mistakenly transferred one patient's medical records. (Tr. 42-43). With respect to Plaintiff's ability to perform the requirements of this particular position, the following exchange occurred between Plaintiff and the ALJ:

> Q: Would you have continued to work if but for the fact that you'd been terminated because of this problem, the HIPAA problem? Would you have continued to work?

> A: It was becoming increasingly difficult for me to do. I couldn't keep up with it.
>
> Q: How was it becoming increasingly difficult?
>
> A: I'd forget things. I couldn't - the volume of work that I was supposed to do became more and more and I had no help from my company but it was really - I'd come home and crash because it was mentally very hard. It became very hard for me.

(Tr. 43).

Plaintiff reported that after being terminated from Health Port, she applied for work at Quality Dairy but was not hired because she "couldn't pass their simple math test." (Tr. 49). Plaintiff testified that she was unable to presently work due to difficulties with coordination and memory. (Tr. 48-49). Plaintiff also reported that she had recently applied to live in "senior housing," but was unable to complete the application herself and instead asked her daughter to do so. (Tr. 50-51). With respect to her memory difficulties, Plaintiff testified that "if I decide I'm going to do anything like run errands or whatever I have to write everything down or I'll forget why I'm going." (Tr. 55). Plaintiff also testified that her daughter possesses power of attorney over her affairs. (Tr. 55).

Plaintiff's daughter, Teressa Vantuyl, also testified at the administrative hearing. Vantuyl confirmed that she held power of attorney over her mother's affairs. (Tr. 59). She further testified that Plaintiff's physical condition had deteriorated and "gotten a lot worse" recently. (Tr. 59-60). Specifically, Vantuyl reported that her mother experiences difficulty balancing when she walks. (Tr. 60). With respect to Plaintiff's cognitive impairments, Vantuyl testified that:

> Yeah. Cognitively she consistently - and it's been more and more frequent she will bring mail to my home. If it is a letter explaining a

> certain process it's very consistent. She will bring it to my home because she does not understand that. Recently we have applied for senior housing and she brought the application to my home because she said she just could not understand the questions, that they were complicated. And they were asking for things like full name, social security number, birthdates. Asked her about her disabilities, general questions about her mobility. They even had pictures on the application and she was unable to understand these. I had to verbally ask her the questions and write the response in order to be able to complete that. She is very forgetful. There are times she does not take her medication which is a concern. She'll forget, oops, I forgot which is a big concern to the family. There's just overall been a very big cognitive decline. Her driving, I have mentioned this. Everybody in the family's kind of noticed. We now back her car out of the driveway so that she doesn't hit the houses on her way out. That is of a concern to us. We did get her eyes checked this last spring to make sure that it was not a visual problem. And they had to adjust her bifocals and her glasses but I really do not feel that the vision was the issue because these problems still exist even having the new glasses. But there are definite cognitive declines along with the physical.

(Tr. 61-62).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can

7

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from (1) heart disease/coronary artery disease; (2) obesity; (3) sleep apnea; and (4) hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-23). With respect to Plaintiff's residual functional capacity, the ALJ

---

be performed (20 C.F.R. 404.1520(f)).

determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she can push/pull 10 pounds; (3) she can sit for six hours and stand/walk for six hours during an 8-hour workday; (4) she cannot reach above shoulder level with her left hand; (5) she cannot climb ladders, ropes, or scaffolds; (6) she can occasionally balance, kneel, crouch, crawl and climb stairs; (7) she can frequently band and stoop; and (8) she should avoid extreme temperatures and concentrated fumes, odors, dusts, toxins, and gases. (Tr. 23).

A vocational expert testified that if limited to the extent recognized by the ALJ, Plaintiff would still be able to perform her past relevant work as a records clerk and assistant retail manager. (Tr. 69-70). The vocational expert further testified that there existed approximately 30,200 additional jobs at the sedentary level that Plaintiff could perform consistent with her RFC. (Tr. 71-72). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

### I. Plaintiff is not Entitled to a Sentence Six Remand

On March 9, 2011, Plaintiff was examined by Dr. Syad Hussein with the Michigan State University Department of Neurology and Ophthalmology. (Tr. 380-96). Plaintiff reported that

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

she was experiencing difficulty walking and cognitive decline. (Tr. 380). Following an examination, Dr. Hussein concluded that Plaintiff was experiencing "gait disturbance secondary to impaired cognition" as well as "cognitive impairment. . .indicative of borderline dementia." (Tr. 383). While this particular examination occurred on March 9, 2011, Dr. Hussein's report was not completed until March 21, 2011, after the ALJ issued his decision in this matter. Plaintiff recognizes that this Court cannot consider this evidence when evaluating the ALJ's decision. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). Plaintiff instead requests that this matter be remanded for further consideration of this evidence pursuant to sentence six of 42 U.S.C. § 405(g).

To obtain remand under these circumstances, Plaintiff must demonstrate that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding. *See Cline*, 96 F.3d at 148. To establish good cause, Plaintiff must "demonstrate a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir., May 7, 2012). Moreover, the "mere fact that evidence was not in existence at the time of the ALJ's decision" does not satisfy the good cause standard. The Sixth Circuit "takes a harder line on the good cause test with respect to timing and thus requires that the claimant give a valid reason for his failure to obtain evidence prior to the hearing." *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

Even if the Court assumes that the evidence in question is material, Plaintiff fails to articulate a good reason why this evidence was not obtained and presented to the ALJ prior to his decision. With respect to this prong of the analysis, Plaintiff simply states that "the evidence did not become available in time for it to be submitted to the ALJ, which provides good cause for the inability of Plaintiff or her administrative counsel to furnish the report to the ALJ." As previously noted, however, the "mere fact that evidence was not in existence at the time of the ALJ's decision" does not satisfy the good cause standard. As Defendant correctly notes, Plaintiff reported experiencing cognitive difficulties as early as February 2009, but has failed to explain why she waited until March 2011 to obtain further evaluation of such. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## II. The ALJ Properly Considered Plaintiff's Obesity

Plaintiff next argues that the ALJ failed to properly consider the impact of her obesity on her residual functional capacity or the impact it had on her other impairments. Plaintiff argues that the ALJ failed to comply with the requirements of Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002).

As the Sixth Circuit has made clear, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009) (citation omitted); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is

a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff suffers from obesity and specifically found that such constituted a severe impairment. The ALJ analyzed the entire record in assessing Plaintiff's residual functional capacity. With respect to Plaintiff's physical limitations, the ALJ's RFC sufficiently accounts for Plaintiff's obesity and the limitations imposed by such. While the ALJ's RFC determination is deficient with respect to Plaintiff's non-exertional impairments, as discussed below, such is not related to Plaintiff's obesity. This argument is, therefore, rejected.

### III.     The ALJ's Credibility Assessment is not Supported by Substantial Evidence

At the administrative hearing, Plaintiff and her daughter both testified that Plaintiff was experiencing significant cognitive difficulties. The ALJ, however, finding Plaintiff to be "not entirely credible," discounted her subjective allegations. Plaintiff asserts that the ALJ's credibility assessment is not supported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at *16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

In discounting Plaintiff's subjective allegations, the ALJ stated that "[t]he severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of her condition." (Tr. 26). It is important to note that this comment was not a restatement or synthesis by the ALJ of something stated (or implied) by Plaintiff's care providers, but instead appears to constitute nothing more than the ALJ's own personal opinion. The ALJ, however, is neither qualified nor authorized to "play doctor" in this manner. *See, e.g., Simpson v. Commissioner of Social Security*, 344 Fed. Appx. 181, 194 (6th Cir., Aug. 27, 2009) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); *Simmons v. Commissioner of Social Security*, 2012 WL 2576784 at *7 (W.D. Mich., June 15, 2012) (same). Moreover, the ALJ's "medical" opinion is contradicted by evidence of record. As Dr. Kountanis stated, Plaintiff's cognitive complaints "are consistent post bypass surgery when the cardiac pump

14

is needed. . .[as] [m]icroemboli are showered at the time the client is on the bypass pump and it is felt that this accounts for the post operative problems with memory." (Tr. 317).

In determining to discount Plaintiff's subjective allegations, the ALJ also mischaracterized the testimony by Plaintiff and her daughter so as to make it appear that their testimony was inconsistent and, therefore, supported discrediting Plaintiff's testimony. Specifically, the ALJ concluded that "[t]he claimant stated she could focus and pay attention and the daughter stated she was unable to concentrate." (Tr. 26). This is a mischaracterization of the testimony. The relevant exchange between Plaintiff and the ALJ was as follows:

> Q: All right. How are you doing [during] the day? Are you able to focus and pay attention?
>
> A: Yes, yeah. I forget - - I'm forgetful - -
>
> Q: Okay.
>
> A: - - very forgetful.
>
> Q: So that's your - - you think is your biggest problem is the forgetfulness?
>
> A: Uh-huh, that I know of.

(Tr. 57).

Plaintiff's testimony in this regard is entirely consistent with the testimony of her daughter, quoted at length above. In sum, the ALJ's decision to discount Plaintiff's credibility, especially as pertains to her complaints of cognitive impairment, are not supported by substantial evidence.

**IV.      The ALJ's RFC Determination is not Supported by Substantial Evidence**

As noted above, the ALJ concluded that Plaintiff retains the ability to perform a range of light work subject to several exertional limitations. The ALJ did not, however, impose on Plaintiff any non-exertional (i.e., cognitive) limitations. Plaintiff argues that the ALJ's RFC fails to sufficiently account for her cognitive difficulties. The Court agrees.

While there does not exist an overwhelming amount of evidence in this case, the evidence more than supports the conclusion that Plaintiff's ability to work is subject to some manner of non-exertional limitations. Plaintiff suffered a stroke in 2005 and underwent heart bypass surgery in 2008, after which she began experiencing cognitive difficulties that Dr. Kountanis reported were consistent with Plaintiff's health history. There is nothing in the medical record that is inconsistent with or that contradicts Dr. Kountanis' conclusion in this regard. Moreover, there is nothing in the record to support the ALJ's conclusion that Plaintiff does not suffer from some degree of cognitive limitation. The Social Security Administration's own Medical Consultant determined that Plaintiff experienced "memory problems" secondary to her bypass surgery and that, as a result, she was only able to "follow 3 part commands." (Tr. 326). In sum, the ALJ's RFC determination is not supported by substantial evidence.

**V.      Remand is Appropriate**

The ALJ's conclusion that Plaintiff was not disabled was based on the vocational expert's testimony that Plaintiff's RFC did not preclude the performance of her past relevant work and, furthermore, that there existed a significant number of jobs which Plaintiff could perform consistent with her RFC. Because the vocational expert's testimony was premised upon a faulty

RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. While there exists evidence supporting Plaintiff's claim of a diminution in her cognitive abilities, the scant evidence of record is insufficient for the Court to find that evidence of Plaintiff's disability is *compelling*. In sum, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 13, 2014
 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge